OPINION OF THE COURT
Joseph Fisch, J.
Defendant stands indicted for the crimes of rape in the first degree and rape in the second degree. The People contend the complainant was 13 years old at the time of the alleged *345 crimes. Defendant, a Nigerian national, seeks to raise as a defense to the charge of rape in the second degree that at the time of the alleged crimes the complainant was his "second” or "junior” wife, given to him by her parents in Nigeria pursuant to the laws and tribal customs of that country. Defendant acknowledges that he already was legally married under both New York and Nigerian law at the time he entered into the purported second marriage, but asserts that the laws and tribal customs of Nigeria allow one man to have multiple wives. The following question in limine was stipulated between the People and defendant for the court’s determination: "If defendant, a Nigerian national, were legally married under both Nigerian and New York law, and if defendant then were to contract a second marriage legal in Nigeria while still married to his first wife and bring the said second wife to New York, what is the status of the second marriage and second wife in New York; specifically, as regards the second wife, is defendant considered 'married’ pursuant to Penal Law § 130.30?”
Penal Law § 130.30 provides that: "A person is guilty of rape in the second degree when, being eighteen years old or more, he or she engages in sexual intercourse with another person to whom the actor is not married less than fourteen years old.” (Emphasis added.)
If the court finds such Nigerian marriage legally recognized in this jurisdiction, defendant may assert its existence as a factual defense to the charge of rape in the second degree. As a matter of law, the court holds that under the stipulated facts the defendant is not "married” to the complainant and therefore cannot raise marriage as a defense at trial to the charge of rape in the second degree.
FINDINGS OF FACT
The parties by stipulation, supra, agree that the defendant was lawfully married to a then-living wife under the laws of New York and Nigeria at the time of his purported second "marriage” to the complainant in Nigeria.
CONCLUSIONS OF LAW
Under the stipulation submitted for determination in limine, even were defendant’s "marriage” to the complainant conducted in accordance with Nigerian law and custom, the marriage is null and void in New York. Therefore, as a matter *346 of law, he is not married to her for purposes of the charge of rape in the second degree (Penal Law § 130.30) and such purported marriage may not be raised at trial as a defense.
Generally, a marriage is recognized in New York if it is valid where consummated. (Van Voorhis v Brintnall, 86 NY 18.) However, it is well established that this general rule does not apply where recognition of a marriage is repugnant to public policy. Clearly, recognition of a polygamous marriage is repugnant to public policy as evidenced by section 6 of the Domestic Relations Law which provides that:
"A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either:
"1. Such former marriage has been annulled or has been dissolved for a cause other than the adultery * * *
"2. [Repealed.]
"3. Such former marriage has been dissolved pursuant [to Domestic Relations Law].”
It is significant to note that under said statute a bigamous marriage is not "voidable” but "absolutely void”. Moreover, bigamy is a crime in the State of New York. (Penal Law § 255.15.)
Hence, "[i]t has been held that when this State is called upon to recognize either an incestuous or bigamous marriage, it will assert its strong public policy of condemnation thereof and refuse recognition even if that marriage was valid where consummated.” (Matter of Bronislawa K. v Tadeusz K., 90 Misc 2d 183, 185, citing Matter of May, 305 NY 486.) Consequently, a polygamous marriage legally consummated in a foreign country will be held invalid in New York. (Earle v Earle, 141 App Div 611; Cruikshank v Cruikshank, 193 Misc 366 [Sup Ct, Monroe County]; Matter of Incuria v Incuria, 155 Misc 755, 759 [Domestic Relations Ct, City of NY] ["If a citizen of a foreign State, in which State polygamy is legal, would bring his half dozen or so legal wives to our country, the marriage of the six spouses to the one spouse would not be considered legal or valid by us”, citing Van Voorhis v Brintnall, supra]; Rubman v Rubman, 140 Misc 658, 670 [Sup Ct, NY County] ["The statutory provision that a marriage is void if contracted by a person whose husband or wife by a former marriage is living, is declarative of public policy”]; see, Simmons v Simmons, 208 App Div 195.)
Recently, the Supreme Court, New York County, reached *347 the same conclusion in a civil matter. (Uboh-Abiola v Abiola, NYLJ, June 12, 1992, at 22, col 1 [Sup Ct, NY County].) There, the plaintiff alleged that she was married to the defendant in Nigeria and was one of defendant’s 25 wives. The court refused to recognize the alleged marriage, holding that "[bigamous or polygamous marriages even if legal where contracted are not considered valid as a matter of law and public policy.” (Supra, at 22, col 1, citing Matter of Satya Pal Sood v Apps, 208 Misc 819 [Sup Ct, Onondaga County], affd 1 AD2d 939.)
Research by this court reveals that this is the first case in New York State in which a defendant asserted the validity of an admittedly bigamous marriage as a defense to a criminal charge.*
For purposes of this in limine ruling, the parties have stipulated that defendant Dr. Ezeonu was already legally married in New York and Nigeria at the time when he purportedly married complainant. Dr. Ezeonu has advised the court that he seeks to bring from Nigeria for trial both eyewitnesses to the purported solemnization of the "marriage” and expert witnesses concerning the laws and customs applicable to such marriage in that country. While Nigerian law and custom may permit a "junior wife”, New York does not recognize such status. Since at the time of his "marriage” to complainant, Dr. Ezeonu was married to his living wife, his "marriage” to her is absolutely void even were it legally consummated in Nigeria. Consequently, this court holds, as a matter of law, Dr. Ezeonu is not married to Chiweta for purposes of criminal liability for rape in the second degree, pursuant to Penal Law § 130.30.
Accordingly, he cannot raise the purported marriage as a defense to that crime.

 In People v Kay (141 Misc 574), a 1931 Magistrate’s Court proceeding, Kay asserted the invalidity of a purported second "marriage” as a defense to the charge of being a disorderly person by reason of his abandonment of his "wife” and his failure to support her. Complainant alleged that Kay "married” her in Turkey. However, complainant already had been married in Russia to another man from whom she was never divorced and who was alive at the time of the marriage in issue. Kay asserted that his "marriage” to complainant was not valid. The Magistrate held that even were complainant’s "marriage” to Kay valid in Turkey, such "marriage” was invalid in New York because, "Foreign law will not be given effect when to do so would be contrary to the settled public policy of the forum.” (Supra, at 578.)